IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM J. PHILLIPS,             )<br>                                              )<br>            Plaintiff,             )<br>v.                                          )<br>                                              )<br>KILOLO KIJAKAZI,[1]              )<br>Acting Commissioner of the Social  )<br>Security Administration,          )<br>                                              )<br>            Defendant.          ) | Case No. CIV-20-288-RAW-SPS |

### REPORT AND RECOMMENDATION

The claimant William J. Phillips requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human*

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-four years old at the time of the administrative hearing (Tr. 45). He completed high school and has previously worked as a pallet operator and yard supervisor (Tr. 16, 338). The claimant alleges inability to work since January 1, 2014, due to COPD, depression, anxiety, PTSD, and high blood pressure (Tr. 337).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on June 1, 2017. His applications were denied. ALJ Michael Mannes conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 21, 2019 (Tr. 7-18). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found at step four that the claimant could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he could only occasionally climb ramps/stairs and stoop, and that he could never climb ladders/ropes/scaffolds, and he must avoid concentrated exposure

to extreme cold, extreme heat, wetness, humidity, dust, odors, fumes, and pulmonary irritants (Tr. 11-12). Additionally, he found that the claimant could perform simple and detailed tasks with routine supervision; relate to supervisors, peers, and the general public on a superficial work basis; respond appropriately to changes in a routine work setting; and that time off task could be accommodated by normal work breaks (Tr. 12). The ALJ then concluded at step five that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, electrical accessory assembler, mail clerk, and marker (Tr. 16-18).

### Review

The claimant's sole contention of error is that the RFC assigned by the ALJ was not supported by substantial evidence. Specifically, he asserts the ALJ failed to account for the opinions of consultative examiner Theresa Horton, Ph.D. as well as two inpatient hospitalizations in 2014, and further failed to address the consistency of the claimant's symptoms with the evidence. The undersigned Magistrate Judge agrees the ALJ failed to properly account for Dr. Horton's opinions, and the case should be remanded.

The ALJ found the claimant had the severe impairments of spine disorders, COPD, trauma and stressor related disorders, depressive bipolar and related disorders, anxiety, and obsessive-compulsive disorders (Tr. 9). The medical evidence related to the claimant's mental impairments reveals that the claimant experienced a traumatic episode when his father died by suicide in December 2013, in addition to losing a brother to suicide in 2006 and his mother to illness in 2008 (Tr. 530, 541). In January 2014, the claimant reported anxiety and depression, and was prescribed medication (Tr. 472-473). By March 2014, he

was reporting blackouts, memory loss, and depression, as well as thoughts of suicide but no plan (Tr. 512-513). The claimant began outpatient treatment at Carl Albert Community Mental Health Center on April 23, 2014, but was ultimately discharged on February 3, 2015, for being non-compliant with appointments (Tr. 569-573). His final diagnosis included major depressive disorder (Tr. 570).

In 2014, the claimant also had two periods of inpatient treatment. The first period was a voluntary admittance that began on September 10, 2014, and ended upon his discharge on September 17, 2014 (Tr. 575). The notes reflecting the claimant's release indicate that auditory hallucinations, paranoid delusions, and suicidal ideation had resolved, and that he was compliant with medication and optimistic about the future (Tr. 576). The claimant presented at least once for follow-up treatment and medication management, on September 29, 2014 (Tr. 574).

The second period of inpatient treatment lasted from November 28, 2014 through December 12, 2014 (Tr. 537). His final discharge diagnoses included major depressive disorder, recurrent, severe, without psychotic features, as well as anxiety disorder (Tr. 538). He was admitted for an emergency detention when he expressed suicidal ideation and concerns related to the upcoming one-year anniversary of losing his father, as well as panic attacks, and was discharged based on an absence of suicidal ideations and ability to commit to a safety plan (Tr. 537, 545). He was instructed to continue medication as well as engage in outpatient follow up (Tr. 538).

On June 10, 2014, Dr. Theresa Horton conducted a diagnostic interview and mental status examination of the claimant (Tr. 529). The claimant reported that he had been in a

car accident just prior to the appointment, where he had backed his car into another car and busted the taillights of both vehicles and been issued a citation (Tr. 531). Following the exam, she assessed him with major neurocognitive impairment, major depressive disorder (recurrent) moderate to severe, and anxiety disorder not otherwise classified (Tr. 532). She stated that he appeared capable of understanding, remembering, and managing mostly simple and routine instructions and tasks, but also likely required prompting and reminding, and that he did not appear capable of effectively communicating in employment settings and that he would have difficulty adjusting in occupational settings (Tr. 532).

Dr. Horton completed a second diagnostic interview and mental status examination of the claimant approximately three years later, on September 6, 2017 (Tr. 625). At this exam, he reported that he no longer drove because his license had been suspended for non-payment of a fine from 2014 (Tr. 625). At that time, the claimant reported his mental health history from 2014 to 2015, but indicated he had not continued treatment because he could not afford it and did not have transportation (Tr. 626). This time, she assessed him with chronic PTSD and late onset dysthymia (Tr. 628). She then found that he appeared capable of understanding, remembering, and managing many simple and complex instructions and tasks, and had likely done best in employment at tasks that were routine and repetitive given his work history (Tr. 628). She stated that he likely would not adjust well in areas that are fast paced and/or densely populated (Tr. 628).

On February 16, 2017, the claimant was hospitalized for burns on his forearms from burning some brush on his property, and he was not discharged until February 21, 2017 (Tr. 664-665). During this treatment, a psychiatric consult was ordered, in which it was

noted the claimant's history of suicidal ideation and mental health treatment, but that a "significant factor" in his care was "his location, lack of funding, and lack of access to care," in light of the rural area where he lived and lack of transportation (Tr. 670). He was given a likely diagnosis of PTSD, and the examiner suspected he was minimizing his mood issues/depression. Medication management was started, but the notes stated that there were significant barriers to care following discharge and that they wanted to attempt to address them (Tr. 670).

As to his mental impairments, state agency physicians determined that the claimant had moderate impairments in the ability to carry out detailed instructions, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and to interact appropriately with the general public (Tr. 89-90). Dr. William H. Farrell, Ph.D. concluded that the claimant could perform simple and some complex tasks with routine supervision, relate to supervisors and peers on a superficial work basis, relate superficially to the general public, adapt to a work situation, and that he was capable of semi-skilled work (Tr. 90-91). On reconsideration, Dr. Sherry Tomak, Psy.D., found that the claimant was not significantly limited in the ability to carry out detailed instructions, but moderately limited in the same other two areas as found by Dr. Farrell (Tr. 127). However, she reached the same conclusions as Dr. Farrell in her RFC assessment (Tr. 128).

In his written opinion at step four, the ALJ thoroughly summarized the claimant's testimony as well as most of the medical evidence in the record. As to his mental

impairments, the ALJ noted the claimant's history of inpatient treatment, as well as the 2017 psychological examination, and rather inexplicably stated that, based on this history, the claimant could perform simple and detailed tasks with routine supervision; relate to supervisors, peers, and the general public on a superficial work basis the claimant; respond appropriately to changes in a routine work setting; and that time off tasks could be accommodated by normal work breaks (Tr. 14-15). He further found Dr. Horton's opinions "complementary and fairly persusasive," as well as supported by examinations and the longitudinal record (Tr. 15). He also found the state reviewing physician opinions persuasive, stating that he had further limited the claimant in light of his slow task completion, inappropriate judgment, and poor insight, but essentially adopting wholesale their RFC assessments (Tr. 16). The ALJ ultimately concluded that the claimant was not disabled (Tr. 18).

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a) & 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b) & 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding

(including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c) & 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2) & 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3) & 416.920c(b)(3).

In this case, the ALJ thoroughly summarized the two opinions from Dr. Horton, then simply stated that they were complementary and partially persuasive in light of the longitudinal record. This was error because while the regulations discussed above require the ALJ to explain how persuasive he found the medical opinions he considered, they also as part of that explanation require him to specifically discuss the supportability and consistency factors. *See* 20 C.F.R. §§ 416.920c(b), 416.920c(c). The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. § 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 416.920c(c)(2).

Here, the ALJ failed to apply these factors at all to Dr. Horton's opinions. In fact,

the ALJ purported to adopt both of them by finding them partially persuasive, but this ignores the fact that they were different in kind and degree of impairment noted for the claimant. Furthermore, the ALJ provided no clarity as to how they were partially persuasive and yet he nevertheless did *not* adopt all the limitations proposed by even the most recent one. It was error for the ALJ to "pick and choose" his way through the evidence in this record in order to avoid finding the claimant disabled. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") (citation omitted); *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") (citation omitted).

Because the ALJ failed to properly evaluate Dr. Horton's opinions, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 24th day of February, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**